Law Offices of
WENDIE L. ELOVICH, P.A.
180 White Road, Suite 204
Little Silver, NJ   07739
(732) 842-3224
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHRISTINA SCORIO, | |
| Plaintiff, | |
| vs. | Civil Action No. |
| | COMPLAINT AND JURY DEMAND |
| LABORERS INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 325, GREGORY HAINES, LOUIE MOSCA, JACK ELKO, RAYMOND PACINO, NEW JERSEY BUILDING LABORERS' STATEWIDE BENEFITS FUND, JACK KOCSIS, AL CASTAGNA, JOSE COLON, CURTIS JENKINS, GARY RAMSEY, ROBERT EPIFANO, MICHAEL FITZPATRICK, ROBERT GARIEPY, JOHN DOES 1-10, | |
| Defendants. | |

Plaintiff, CHRISTINA SCORIO, residing at 2430 Crossing Way, Wayne, New Jersey, by way of Complaint against Defendants, alleges and says:

**GENERAL ALLEGATIONS**
**(Preliminary Statement)**

1.     Plaintiff, Christina Scorio (hereinafter "Scorio" or "Member") has been designated Member No. 2976749 of the International Laborers of North America, Eastern Region, since 1988, and, also, the Hudson County Laborers, Local 325.

2.     Scorio has long and extensive credentials, licenses and certifications, as a qualified journeyman laborer.   This Member presents with the most experience, including Job Steward, as one of only three female members within the Local, for job referrals and hiring, but she cannot obtain assignment due to gender and her lawful Union-related activity.

3.     Laborers International Union of North America (hereinafter "LIUNA") operates with principal offices located at 905 16th Street, NW, Washington, DC 20006.

4.     For times relevant, Defendant Jack Elko (hereinafter "Elko") purportedly served as the Inspector within the Office of the Inspector General, but he did nothing on Scorio's behalf for the times she pursued lawful Union activity.

5.     Defendants LIUNA and its subordinate Union, specifically, Defendant Local 325, agreed to maintain and administer a non-discriminatory and non-retaliatory processing system for referral of applicants to employment, in a fair and equitable manner, and to simultaneously establish records and procedures adequate to disclose fully the basis on which each job referral is, and was, made; however, the records, procedures and rules are not enforced nor implemented for purposeful discriminatory pre-selection and against the terms of the Collective Bargaining Agreement and Master Variances and other manuals protecting Members, as impacts the Plaintiff herein.

6.     Defendant's local Union Office is located at 311 Newark Avenue, Jersey City, New Jersey.

7.     Defendant Gregory Haines (hereinafter "Haines") has served as the Acting Delegate for Local 325 from the time a Trusteeship was established, on or about February 2008.  The prior Delegate, Defendant Louie Mosca, was indicted for various

2

acts, including extortion, mail fraud, racketeering, and, therefore, removed. Before that time, Haines was designated Union Business Agent.

8.    For times mentioned, Defendant, Raymond Pacino (hereinafter "Pacino") has always been the President of the Local, and served as long as Plaintiff was a Member, a greater period than 22 years, of her dedicated service.

9.    For years, Scorio has been challenged by the sexually harassing conduct and messages, written and verbal, that was, obscenities or pornography referencing her, or, for her attention, within the Union or job sites at the Employer's premises, which was never properly investigated by reason Haines is, and was, himself, totally proactive to perpetrate sexual harassment methods and practices.

10.    As Plaintiff complained through time, Defendants Mosca, Haines and other agents of Local 325, including John Mancini and Paulie Roland, utilized their unbridled authority to affect her job referrals on an ongoing discriminatory basis, and, they ignored stated Hiring Hall Rules and the registration lists for available referral.

11.    More importantly, Scorio possessed the skills for the jobs she applied for; and there were continuously mandatory State of New Jersey requirements to send out the female members to those jobs, but she was not referred or assigned to work.

12.    Further, it appeared certain that Plaintiff was being targeted for retaliatory activity since she would not tolerate the open, flagrant sexual harassment surrounding her person.

13.    The iron clad message to Scorio was to suffer her fate in silence, and, Scorio tried to avoid complaints, knowing the reprisal scheme against her was established from higher Officials and agents within the Local.

3

14.    Scorio's job assignments became increasingly less frequent, although there was available work and she remained qualified to perform her work and eligible on available lists.

15.    Scorio would keep rising to the prime eligible positions on the available lists, but would be by-passed in purposeful manner.

16.    It became impossible for Plaintiff to obtain steady work after her last Complaint against Haines, specifically for sexual harassment, during 2008.

17.    Plaintiff filed an Unfair Labor Practice Charge to the National Labor Relations Board, Region 22 at Newark, New Jersey, which was lawful Union-related activity, and, thereafter, she was unduly pressured to withdraw her first Charge at May 18, 2008, in order to gain referrals for work.

18.    Nothing positive transpired for Scorio after her Complaint and such Union-related (protected) activity.

19.    As more proof, Scorio was not given any days of work during 2008. More time elapsed, and she received only six single days of work during 2009 and one single day during 2010, which others had rejected.

20.    The Union, through its highest agents, including Pat Byrnes, Assistant Regional Manager, refused in the past to proceed to a grievance process on her behalf.

21.    Scorio's issues and complaints were covered up to protect Haines, or others in the Union, John Does 1 through 10, although she had been falsely assured there would be an investigation to determine whether the Acting Delegate was sexually harassing her or causing others to discriminate or retaliate in their referrals to Plaintiff, as a consequence of her complaints and lawful Union activity.

4

22.    More time elapsed during 2008, 2009 and 2010 and Plaintiff was still out of work, as if the Collective Bargaining Agreement, Master Regulations, Variances, and the Amended Job Referral Rules issued by LIUNA had absolutely no meaning for Christina Scorio to obtain any work, and, work existed for her.

23.    Plaintiff knew she could not afford to reject any work since she was becoming increasingly destitute without work assignment and compensation, but nothing was offered and her requests or complaints were ignored.

24.    Plaintiff was caused to withdraw from her Annuity and Retirement funds.

25.    Eventually, she noticed her Accounts were so diminished that it made little sense as compared to the accurate recordkeeping for her past work history within, Local 325 and LIUNA, and she filed an appeal.

26.    A full accounting and restitution must be rendered on Scorio's Pension and Annuity program through to current date.

27.    Scorio knows that she has definitely lost hours and the requisite compensation was not detailed nor paid into her Pension and Annuity Fund, for purposeful retaliatory action against her or the monies were intentionally removed.

28.    Plaintiff's appeal went to the New Jersey Building Laborers' Statewide Benefit Fund ("NJBLS"), and its Trustees, Co-Chairman Raymond Pacino, Co-Chairman Jack Kocsis, Al Castagna, Jose Colon, Curtis Jenkins, Gary Ramsey, Robert Epifano, Michael Fitzpatrick and Robert Gariepy, who denied the deficient funding.

29.    For all times mentioned, Plaintiff Scorio was never treated like her male counterparts within the International or Local or the NJBLS.

30.   At all times relevant, the Defendants were responsible for all their agents and servants or employees conduct, and, for failing to control all such individuals' conduct, respondeat superior, including Defendants shown as John Does 1 through 10.

31.   At all relevant times, the Defendants have acquiesced in, condoned, participated in, or ratified all the actions of its agents, representatives, and the higher Members or Officers responsible to know all Christina Scorio's rights and remedies under their Contracts, Manuals, Master Rules and Variances, however, they have all covered up their agents' illegal actions and omissions and conspired to remove her from the Union payroll, Annuity and Pension program, and, likely intentionally dissipated her Annuity and Pension.

32.   In furtherance, the Union Representatives pretend not to have any accountability for Plaintiff's Annuity and Pension record on the basis of lost paperwork or for lack of sufficient computers, but Plaintiff has preserved strong proofs to preserve ERISA and other claims, which includes the NJBLS, and its Trustees, as aforesaid.

## JURY DEMAND

33.   Plaintiff demands a trial by jury in this action.

## JURISDICTION AND VENUE

34.   The jurisdiction of this Court is predicated on Federal questions, including Sec. 502(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1132(a). Further, there is supplemental jurisdiction over the Plaintiff's State law claims, 28 U.S.C. §1367(a) because these arise out of the same set of facts as the Federal claims such that all claims form part of the same case or controversy. The New Jersey L.A.D. is applicable for harassment, sexual discrimination, and, more specifically,

N.J.S.A. 10:5-12(d).  (Common law remedies remain applicable.)  The amount in controversy is sufficient, exclusive of interest and costs.

35.  Events giving rise to Plaintiff's actions occurred in the District of New Jersey.  Venue properly lies in this District pursuant to 28 U.S.C. Sect. 1391(a).

## FIRST CAUSE OF ACTION
### (Breach Of All Union Contract Provisions To Member)

36.  Plaintiff repeats and realleges the "General Allegations," paras. 1 through 35, as if same were fully set forth at length herein.

37.  As aforesaid, Christina Scorio has established herself within her Union as a dependable safe worker.  Further, she was designated as a Shop Steward since 1994, knowing that she always kept the workers safe, ensured all equipment was used safely, and she negotiated fair pay and overtime and, overall, complied to the project assignments, in accordance with the various Contracts.

38.  Local Union Members were satisfied when Scorio served the position as Shop Steward, however, higher Members and Officers never indicated their acceptance of her, although Scorio marched on picket lines, pursued volunteer work to aid the Union, or engaged in supportive activities for Union Delegates.

39.  Plaintiff endeavored to obtain work through the Union's Hiring Hall and adhered to the same accepted practices of her male counterparts for all her years of membership and job searches, but she was intentionally denied work.

40.  During September of 2007, past Delegate 'Louie' Mosca had referred her out to a job at Public School No. 2, Hudson County, New Jersey, as a Shop Steward.

41. Besides laborers working exclusively for Diamond Tech, Scorio was amongst the first laborers referred out for this job, but she was simultaneously designated Shop Steward.

42. Scorio was caused to raise objections on the job site that other carpenters Union members were taking over their Union members' work. Both Unions' foremen and Delegates arrived on the scene to resolve the dispute and each foreman announced that Scorio's directives were to be followed.

43. When the Delegate left, the carpenters' members began writing sexually explicit messages regarding Scorio on the Porto-Sans outside the building, and more sexually suggestive messages about Scorio on the inside walls of the School, itself.

44. Communications floated back and forth from the Union to the worksite for weeks, but the sexual harassment messages remained concerning Scorio for her to confront each day of work and her Union Delegate did nothing.

45. Finally, Haines came back to the Plaintiff's worksite and spoke directly to the Supervisor to have all the graffiti removed, and, assurances were supposedly given, although the graffiti remained for more weeks.

46. On that very visit to eliminate sexually harassing messages written to embarrass Scorio, Defendant Haines dared to sexually insult this Member by insisting that Scorio look at a picture on his cell phone. Then, he showed her a picture depicting a woman having sex with a horse.

47. The Delegate's remark was even more distasteful when he stated: "My girlfriend Patty sent it to me for you." There were witnesses to this sexual harassment of Plaintiff, but the conversation was only directed to Scorio, not the others.

8

48.    Plaintiff actually inquired of the Delegate why he would show her this picture and, as she walked away from him, Haines continued to laugh, to her detriment and utter embarrassment.

49.    Plaintiff kept doing her job until there was a layoff and then she volunteered to go down to the job each day to "mandate the job," that is, to walk around the site to ensure the trades were not doing laborers' work.

50.    After the incident, Haines intentionally ignored Scorio, and he did not investigate whether there were valid layoffs when Plaintiff kept reporting the true facts to him.

51.    Instead, Haines purposely sent another male laborer, unauthorized, to replace her, although the laborer was never requested to come to Public School No. 2.

52.    Scorio went down to the Union to confront Haines with his unfounded retaliatory tactics due to her prior incident with him.

53.    Plaintiff actually challenged this Delegate, reminding him that she was the designated Shop Steward and he was supposed to be finding her jobs, not dismissing her from work and replacing her.

54.    Ultimately, the Contractors/Employers agreed with Plaintiff and they specifically indicated Plaintiff was being recalled with the rest of the laborers for return to the job site at Public School No. 2, however, Haines outright rejected this decision concerning Scorio, and, then, threatened the Contractor/Employer for protecting her.

55.    On May 1, 2008, Scorio was caused to document to the Union President Pacino her complaint concerning Haines' actions and she requested an investigation, but no grievance occurred.

9

56.    With the support of others at Diamond Tech, Plaintiff continued working as the Union Steward on the job through July of 2008, but then she became laid off with the other laborers.

57.    The aforesaid Jack Elko, Inspector for LIUNA, took a statement from Plaintiff before she left the job site and she tried to persuade him to interview others, who could corroborate the facts regarding Haines, exactly as it took place, pointing out the actual witnesses to incident(s).

58.    For the relevant times, Plaintiff sought assistance from Union Representative Pat Byrnes to ensure a fair investigation, grievance process and ongoing non-retaliatory work, but the opposite facts occurred with greater reprisal than Plaintiff ever anticipated could occur against her.

59.    Scorio would go down to the Hall to sign the out-of-work lists, but no work would be assigned to her.

60.    For all her inquiries through the Union, the blame was placed on Haines, as a powerful agent with decisive ability to impact potential Employers/Contractors to suddenly refuse to hire Plaintiff, and, Plaintiff found she was no longer being treated like her counterparts for fair referrals.

61.    Scorio was finally caused to file an Unfair Labor Practice Charge, Case No. 22-CB-11084 to the National Labor Relations Board (hereinafter "NLRB"), Region 22, Newark, New Jersey, after the discriminatory acts and retaliation had become so bold and audacious, due to her complaints and Union-related activity, that she was given no work in a six month period after she complained about the Acting Delegate Haines' actions towards her.

10

62.    No proper investigation had been conducted on behalf of Scorio in all that timeframe, and she knew her witnesses were available to corroborate the facts and circumstances against Haines.  Other John Does 1 through 10 in the Local would not move forward on her grievance or LIUNA agents stopped it.

63.    Scorio was ultimately coerced in the exercise of her rights to "administratively dismiss the NLRB charge," strictly in order to gain referrals again from her Union, although the Union agents knew, or should have known, the discrimination and retaliation scheme against Scorio was calculated to be ongoing, and to deny her work no matter what she did.

64.    Plaintiff was not treated like her male counterparts within the International Union or Local when she pursued her NLRB complaint.

65.    There was no effort for good faith representation or advocacy for Scorio, but, rather, Haines' or others' sexual harassment activities were condoned, along with the retaliatory scheme of those in the Local Union, who followed Haines' or Pacino's directives (overt or covert) to fail to assign Scorio work, and this is ongoing adverse discriminatory and retaliatory action to the very date of filing of the within Complaint.

66.    For these times, there was a pretense that LIUNA or the NLRB or agents of Local 325 would provide advice, assistance and advocate on behalf of Scorio, but it has not occurred.  Instead, Plaintiff was put under duress to withdraw or dismiss her formal complaint.

67.    There is no real layoff excuse which should impact Scorio, and work exists even in this difficult economy.

11

68.    The Union, International and Local, through its agents, has violated its duty of good faith and fair dealing.

69.    Furthermore, Scorio has spent at least two years inquiring about the Inspector's Report from Elko, and others, within her Union, without a result.

70.    There was initially an excuse that the Report was not being written, but when it issued, Scorio did not learn what was written, or any outcome.  She only knew there were not appropriate interviews undertaken on her behalf and the facts were covered-up.

71.    Plaintiff kept going to the Union Hall and meetings to release the Reports pertaining to her complaints, but nothing was done for her.  Scorio was entitled to enforce a reasonable belief that the Unions would enable her to remain employed and protect her and assume their proper duty through their agents.

72.    Moreover,  Scorio  kept  following  through  sending  separate communications to the Union's Attorney General and, then, Board Agents, and also to Doug Gow, the higher boss at the Inspector's Office, and to higher Supervisors at the Union, International and Local, however, to no avail.

73.    There was never any agent or authorized individual, who would respond to Plaintiff's original facts for investigation of Haines, nor his unfair treatment program, or disparate treatment, which was evident in failed referrals, discriminatory adverse action and retaliatory intentional omissions, which left Scorio without work, wages, benefits or fringe benefits.

12

74. Haines knew Plaintiff had a hip replacement surgery way back at December 23, 2008, but her return to work notes were always appropriate for ongoing timely referrals, and, there was no basis to compel her retirement.

75. Defendant Haines' excuses during 2009 and 2010 altered and he brashly insisted that he wanted Scorio retired. When Scorio refused, Haines acted as if he was medically licensed and qualified to determine Scorio could not work, which was not true.

76. Thus, Haines and other Defendants have acted out of mixed motivation, and, more particularly, based on discriminatory notions and, more specifically, for retaliation, which is against all Union and LIUNA express and implied Contract provisions, and, also, N.J.S.A. 10:5-12(d).

77. Certainly, all Defendants to this action are contemplated to serve in a fiduciary relationship to Plaintiff, that required an express and implicit trust and confidence, but each and everyone violated those Contract provisions as impacts Plaintiff, knowing, or should be knowing, the adverse impact upon her past, present and future earning capacity for lasting damages.

78. Plaintiff has kept paying her Union dues, but there has been a steady failure to perform by Defendants insofar as referrals to Scorio for work, and Union Contract provisions from LIUNA and Local 325 all therefore breached, in all aspects.

79. As a proximate result of the foregoing, Defendants (each and everyone) breached their Contract(s) so as to cause Scorio losses, and/or prevented any monetal gain to her from the existence of Contracts, and, are therefore responsible for damages and punitive damages, as a matter of course.

13

80.     Due to the special relationship of Defendants to Plaintiff and the incumbent duties, Plaintiff is entitled to punitive damages, and, also, for the emotional upset intentionally caused to her for so long.

81.     Plaintiff has been effectively wrongfully terminated and all such adverse employment action is intentional or rises to being tantamount to intentional activities amongst Union government officials/employees abusing power so egregious to shock the conscience.

82.     As a proximate result of the foregoing, Plaintiff was caused to suffer emotional upset and damages, including loss of wages, benefits and fringe benefits, along with quality of life benefits.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, awarding compensatory damages and punitive damages, costs and interests upon suit and for any other damages that the Court deems just and proper, including legal fees and costs for the within litigation.

## SECOND CAUSE OF ACTION
### (Tortious Interference With Contractual Relationship)

83.     Plaintiff repeats and realleges the General Allegations and the First Cause of Action, paras. 1 through 82, as if same were fully set forth at length herein.

84.     As aforesaid, Plaintiff Scorio is well qualified for ongoing work and to act as a Shop Steward.  Even in this difficult economy, the Defendants had sufficient work to refer Scorio for steady work.

85.     The Defendants LIUNA and Local 325 negligently appointed and retained Delegates, Business Agents and Representatives, including Louie Mosca, Gregory Haines, along with other John Does 1 through 10.

14

86.    Further, Defendants failed to supervise, monitor or control their activities as impacts upon referral of Scorio to employment in a fair and equitable manner.

87.    As proof, Defendants are required to establish record and procedures adequate to disclose fully the basis on which each referral is made, but the records, procedures and rules are not enforced nor implemented for purposeful discriminatory pre-selection.

88.    Further, Defendants, through their agents, allow for retaliatory measures against their own Members like Scorio so that she does not obtain any job referrals.

89.    Moreover, Hiring Hall Rules and the Registration Lists impacting Scorio are intentionally ignored or abandoned to favor those male members or the preferred laborers instead of her.

90.    Defendants, through their agents, have intentionally and maliciously interfered, without justification or excuse, with Plaintiff's economic and contractual business relationships, past, present and future.

91.    Defendant Haines has even dared to suggest Plaintiff will be ignored until she retires.

92.    Therefore, Defendants are liable for all Plaintiff's damages caused by their interference, whether it be at 2007, 2008, 2009 or 2010.

93.    Their program of interference (intentional and malicious) began long ago due to Plaintiff's gender and speaking up for herself and others for safety, or by reason of notions of her whistleblowing.

94.    These parties appear in direct competition for jobs in the same market, and, through the process of their interference, these Defendant wrongdoers have

15

prevented proper Inspector General Investigation, proper reporting, appropriate grievances, a positive NLRB outcome, and have otherwise acted to cover-up their fraud, dishonesty and, more generally, illegal acts.

95.    Plaintiff has been effectively wrongfully terminated and all such adverse employment action is intentional or rises to being tantamount to intentional activities amongst Union government officials/employees abusing power so egregious to shock the conscience.

96.    As a proximate result of the foregoing, Plaintiff was caused to suffer emotional upset and damages, including loss of wages, benefits and fringe benefits, along with quality of life benefits.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, awarding compensatory damages and punitive damages, costs and interests upon suit and for any other damages that the Court deems just and proper, including legal fees and costs for the within litigation.

## THIRD CAUSE OF ACTION
### (Conspiracy)

97.    Plaintiff repeats and realleges the General Allegations and the First and Second Causes of Action, paras. 1 through 96, as if same were fully set forth at length herein.

98.    Plaintiff Scorio has been an open victim of the negligent appointments, practices and methods of Business Agents, Delegates and officials within her Union, LIUNA and Local 325.

99.    For years, Plaintiff had worked as a laborer and learned to tolerate male apathy or remarks by reason that she worked side-by-side with other male laborers.

16

Moreover, Scorio established herself within her union as a dependable, safe worker like her male counterparts and she was often chosen as a foreman, shop steward and for other important roles such that the men around her became used to her and appreciated her loyalty and dedicated efforts in this tough line of work.

100.   Nevertheless, Plaintiff came to realize that the Defendants and their agents bore her a grudge for performing what they perceive as male laborers' work, or Shop Steward duties, or whistleblowing, and they have shown her an ongoing discriminatory bias, which does not go away.

101.   Plaintiff tries to take a 'low profile,' ignore harsh words with sexual inference, or female ridicule or mockery, and to adapt to each situation where she is referred.

102.   There is no real effort for corrective action, or grievances, or Inspector General Investigation, or reporting, or any meaningful purpose carried out when she complains to the Union (or Employers) or processes complaints even to the NLRB.

103.   The aberrant goal is always to challenge Plaintiff with outrageous misconduct, sexual harassment, gender bias, retaliation, and to humiliate or ridicule Scorio into a pathetic silence as a victim, rather than permit her to become the Union whistleblower, each time.

104.   Plaintiff stands out as one of five female laborers with the most longevity amongst them.  (She was the only female member of her Union for years.)

105.   Plaintiff was accustomed to rough tradesmen, laborers, Employers, and the Union, alike, but worksites occur at public places of accommodation defined under

17

the New Jersey L.A.D., and, hence, offer the requisite protection to the Plaintiff for all such intentional gender discrimination acts and omissions.

106.    All Defendants' actions (their agents, servants and employees) were always wanton, willful, and were committed in reckless disregard for Plaintiff's rights and well being.

107.    Plaintiff asserts that Defendants' acts, in aggregate, (through their agents') constitute purposeful sexual harassment and discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., and, more specifically, N.J.S.A. 10:5-12(d).

108.    Further, Plaintiff was a member of a protected class requiring protection and Defendants knew, or should have known, that fact due to her ongoing complaints and she went so far as to demand a grievance and NLRB proceeding after the Inspector General's Report was so obviously a cover-up of wrongdoing.

109.    No grievance occurred and Scorio was caused to acquiesce and capitulate to "administratively dismiss the NLRB action" on her part on the false assurance the Union would assign her steady work with ongoing referrals.  (None occurred.)

110.    Plaintiff was put under a situation of duress within her Union for filing a complaint to the NLRB.

111.    Defendants have acted in combination with a common design to perpetrate torts against her as set forth herein.

112.    More specifically, Defendants have acted as a confederation with a common design for unlawful purposes of discrimination, retaliation and against their firm

18

Contracts and other Member Manuals, Master Regulations, Variances and the Amended Job Referral Rules to aid and abet one another and, also, to cover-up their own wrongdoing affecting Scorio, each time.

113. Every Defendant (or his agent) belonging to this confederation work towards a conspiracy against Plaintiff's interests and are, therefore, equally and vicariously liable for Plaintiff's damages, special damages and punitive damages.

114. Moreover, Defendants, through their agents, have actually defamed Plaintiff to Employers rather than deal with problems at the worksites, or to cover-up their own blameworthy misconduct, each time.

115. Plaintiff has been effectively wrongfully terminated and all such adverse employment action is intentional or rises to being tantamount to intentional activities amongst Union government officials/employees abusing power so egregious to shock the conscience.

116. As a proximate result of the foregoing, Plaintiff was caused to suffer emotional upset and damages, including loss of wages, benefits and fringe benefits, along with quality of life benefits.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, awarding compensatory damages and punitive damages, costs and interests upon suit and for any other damages that the Court deems just and proper, including legal fees and costs for the within litigation.

## FOURTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

117.    Plaintiff repeats and realleges the General Allegations and the First, Second and Third Causes of Action, paras. 1 through 116, as if same were fully set forth at length herein.

118.    Defendants' actions constitute intentional infliction of emotional distress, particularly as Plaintiff was compelled to realize that there was definitely a constant sexual harassment and intentional discrimination scheme underlying the aforesaid acts calculated to make her a victim.

119.    As further proof, Defendants' agents seemed to act as if Plaintiff could actually be made their victims in the workplace simply because of their own biased perception of female laborer working amongst them.

120.    All Defendants' conduct (including agents, servants and employees) was malicious, egregious, willful, and in reckless disregard of this Plaintiffs' rights for which punitive damages are appropriate against these Defendants, and more particularly since Defendants ostracized their own Union Member, despite a strict premise they would abide Union provisions for a fair and just, non-discriminatory, non-retaliatory environment and based on the existing laws, nationwide.

121.    Defendants' agents imposed a purposeful hostile work environment upon Plaintiff to make her quit their Unions based on her gender, and, when these agents failed their objectives after tormenting Plaintiff for so long, they acted to try to make her retire through the Delegate.

20

122.  For all times relevant, Defendants knew, or should have known, the named Defendants or their agents caused Plaintiffs' problems and intentionally failed to provide any remedies or improve her status of not working.

123.  In total effect, whether it be the purposeful harassment or the sexual discrimination or retaliation targeted to her, or to prevent her from working, they have pushed Scorio out of their Union.

124.  Defendants' agents of authority always failed to control the Local, intentionally and by outrageous design.  There is no real effort to monitor their appointed Officials or Supervisors, or event to know the pension and annuity records are correct.

125.  Plaintiff has suffered injuries, including, but not limited to, emotional distress, humiliation, embarrassment and pain and suffering, as well as a loss of income and benefits, then, and, now.

126.  Scorio's future remains bleak by reason of the Pension and Annuity Accounts for her not matching her papers.  Within the Union, they pretend to lose paperwork or have failed computerized records, but this is more reprisal against Scorio simply to harass her, and, her appeal to the NJBLS was meaningless.

127.  Plaintiff has been effectively wrongfully terminated and all such adverse employment action is intentional or rises to being tantamount to intentional activities amongst Union government officials/employees abusing power so egregious to shock the conscience.

128. As a proximate result of the foregoing, Plaintiff was caused to suffer emotional upset and damages, including loss of wages, benefits and fringe benefits, along with quality of life benefits.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, awarding compensatory damages and punitive damages, costs and interests upon suit and for any other damages that the Court deems just and proper, including legal fees and costs for the within litigation.

## FIFTH CAUSE OF ACTION
### (ERISA)

129. Plaintiff repeats and realleges the General Allegations and the First, Second, Third and Fourth Causes of Action, paras. 1 through 128, as if same were fully set forth at length herein.

130. Plaintiff has become destitute for lack of referrals, and, she has been caused to withdraw monies from her Pension and Annuity Accounts.

131. As aforesaid, Plaintiff was a Union Member since 1988, but the present recordkeeping maintained by Defendants LIUNA and Local 325 fails to credit all her hours for pension and annuity monies for specific years 1989, 1995 through and including 2001, 2003, 2004, and, then, 2006.

132. For all these years, Plaintiff would have worked for Employers, who may have made some deductions for unemployment and disability, but the required fringe benefit contributions to Local 325 were not monitored or paid into the Benefits Fund for her Pension and Annuity Accounts, or else credited to others or withdrawn.

133. During specific years 1988 through 1995, Plaintiff would have obtained benefits and fringe benefits for Saturdays as "double time" and her Sunday and holiday

work should have been "triple time" rates, but this was not ensured by the Union and the monies are missing from her Pension and Annuity Accounts.

134.   In other words, Plaintiff's own time and compensation records turned into the Employers and Union were not monitored for appropriate payments, and, the deficiency must now be made up by LIUNA  and Local 325 for their failings, year by year.

135.   Plaintiff's Pension Benefit history is intentionally inaccurate for all years, above-written, and, this occurred while Defendants' agents deprived her of work.

136.   Defendants' omissions were intentionally committed in violation of Plaintiff's rights.

137.   Defendants' goals were definitely methodical and evidenced a practiced egregious action to deny her proper Pension and Annuity Funds, when she desperately needed same.

138.   Therefore, Plaintiff sues the Defendant Unions and, also, the New Jersey Building Laborers Statewide Benefit Funds ("NJBLS Benefit Fund") and its Laborer Trustees and Employee Trustees, Co-Chairman Raymond Pacino, Co-Chairman Jack Kocsis, Al Castagna, Jose Colon, Curtis Jenkins, Gary Ramsey, Robert Epifano, Michael Fitzpatrick and Robert Gariepy, for failed crediting and reporting or deficient funds, and, then, for their negative decision and failed appeal process in all aspects.

139.   At 2009, Plaintiff pressed an appeal forward for additional credits, not being shown anywhere in Union reports or social security earnings.

140.   The final decision of the Trustees was made against her at 2009, leaving Scorio time to pursue this cause of action within the Complaint before this Court under

23

Sec. 502(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1132(a).

141.   Plaintiff has been effectively wrongfully terminated and all such adverse employment action is intentional or rises to being tantamount to intentional activities amongst Union government officials/employees abusing power so egregious to shock the conscience.

142.   As a proximate result of the foregoing, Plaintiff was caused to suffer emotional upset and damages, including loss of wages, benefits and fringe benefits, along with quality of life benefits.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, awarding compensatory damages and punitive damages, costs and interests upon suit and for any other damages that the Court deems just and proper, including legal fees and costs for the within litigation.

## DESIGNATION OF COUNSEL

Pursuant to the Federal Rules, WENDIE L. ELOVICH, ESQ. is hereby designated as Trial Counsel for the Plaintiff in the within matter.

Dated:   June 7, 2010                    Law Offices of
                                         WENDIE L. ELOVICH, P.A.
                                         Attorney for Plaintiff


                                         By: /s/Wendie L. Elovich
                                             WENDIE L. ELOVICH, ESQ.

24

## CERTIFICATION OF VERIFICATION AND NON-COLLUSION

1.  I am the Plaintiff in the foregoing Complaint to which this is annexed.

2.  The allegations of the Complaint are true to the best of my knowledge and belief. The Complaint is made in truth and good faith and without collusion for the acts set forth therein.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:   June 7, 2010

_____
CHRISTINA SCORIO

25